UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOSEPH M. ARTERBURN et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | 3:14-cv-00041-RCJ-VPC |
| AMERICAN FAMILY MUTUAL INSURANCE CO., | ) | ORDER |
| Defendant. | ) | |

This case arises out of a first-party insurance dispute after a residential burglary. Pending before the Court is a Motion to Remand (ECF No. 6). For the reasons given herein, the Court denies the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs Joseph and Kelly Arterburn's home was burglarized on July 10, 2011 while they were on vacation. (*See* Compl. ¶¶ 1, 2, 9, 10, Jan. 17, 2014, ECF No. 3). At the time of the burglary, the home was insured by Defendant American Family Mutual Insurance Co. under Policy No, 27P07021-01, with dwelling coverage of $245,600 and personal property damage/replacement coverage of $184,200. (*Id.* ¶¶ 12–14). Plaintiffs immediately notified Defendant of the loss, and Defendant opened Claim No. 00-861-081467-4229. (*Id.* ¶ 15). Plaintiffs completed a proof of loss form, provided proof of ownership of items worth over $250,000 and met with Defendant's adjuster, Max Fisher, at the residence to inspect the damage to the real property. (*Id.* ¶ 17).

Seven months later, on January 30, 2012, Defendant sent Plaintiffs its first estimate of the loss to the personal property, estimating the replacement cash value ("RCV") at $59,891.95, the recoverable depreciation ("RD") at $6156.58, the non-recoverable depreciation ("NRD") at $9774.17, and the actual cash value ("ACV") at $28,741.49. (*Id.* ¶ 18).[1]  Defendant enclosed a check for ACV of $28,741.49. (*Id.* ¶ 19).  Plaintiffs, fearing that cashing this check would prevent them from recovering additional amounts because of a "restrictive endorsement" on the check indicating that it was "payment in full" or "final payment," returned the check to Defendant. (*Id.* ¶¶ 20–21).  On June 15, 2012, Defendant sent Plaintiffs a letter estimating the RCV of the real property at $1845.23, RD at $424.19, and ACV of $1421.04. (*Id.* ¶ 24).  Defendant enclosed a check for ACV of $1421.04. (*Id.* ¶ 25).

On June 27, 2012, Plaintiffs sent a letter to Defendant's Claim Desk Senior Adjuster Helen Beaty indicating that they had not received a final determination of the claim. (*Id.* ¶ 30).  Plaintiffs later received a check from Defendant dated June 18, 2012 for ACV of the personal property of $28,741.49. (*Id.* ¶¶ 27, 31).  The June 18, 2012 check for ACV of the personal property did not contain the same "restrictive endorsement as the January 30, 2012 check that Plaintiffs had returned to Defendant. (*Id.* ¶ 28).  Plaintiffs disputed the payment for the loss of personal property by letter on July 30, 2012, returning the June 18, 2012 check for ACV. (*Id.* ¶¶ 36–38).  Beaty responded by letter dated August 24, 2012, indicating that the June 18, 2012 check had been voided and that Defendant would only reimburse for items replaced or repaired

---

[1] Typically, an insurance company will issue separate checks for ACV and RD upon completion of claim forms and proof of ownership, will not reimburse for NRD, and, once the insured replaces any items and provides proof of replacement cost, will issue one or more additional checks for the cost of replacement minus ACV (which has already been reimbursed), with the total reimbursement for any given item limited by RCV.

before July 10, 2011. (*Id.* ¶¶ 41–42).[2]

On November 8, 2012, Defendant sent Plaintiffs a revised estimate of the loss to the personal property, estimating the RCV at $74,012.67 (an increase), the RD at $6156.58 (no change), the NRD at $15,593.65 (an increase), and the ACV at $37,042.75 (an increase). (*Id.* ¶ 46).[3] Defendant enclosed a check for $37,722.35. (*Id.* ¶ 47).[4] On December 10, 2012, Beaty sent Plaintiffs a letter indicating that Fisher would complete the assessment of Plaintiff's claim. (*Id.* ¶ 48). On January 14, 2013, Plaintiffs sent Beaty a letter indicating that they had received the revised estimate and the check for ACV, and that they would send her receipts for replacement items to receive RCV. (*Id.* ¶ 49). In that letter, Plaintiffs noted that they had previously sent some such receipts to Beaty but had not received RCV for replaced items, argued that Beaty should not have "deducted for depreciation," and requested RCV and depreciation payments. (*Id.* ¶ 50).[5] In the letter, Plaintiffs also noted that they had not yet been issued a check

---

[2] Plaintiffs imply elsewhere that the Policy (or Defendant's interpretation of it) only provides for reimbursement (whether ACV or RCV) for items reported within one year of the loss. (*See id.* ¶¶ 32–35). Plaintiffs quote Beaty as identifying July 10, 2011 as the deadline, but that was in fact the date of the loss according to Plaintiffs. It is not clear if Plaintiffs in paragraph 42 of the Complaint have misquoted Beaty or have correctly quoted Beaty's own error. In any case, Plaintiffs allege that Defendant purposely and wrongfully (both in their case and as a matter of practice) delayed the resolution of the claim in order to prevent full payment under the one-year deadline for reporting RCV. (*See id.* ¶¶ 32–35, 59–64).

[3] Typically, an insurance company will issue separate checks for ACV and RD upon completion of claim forms and proof of ownership, will not reimburse for NRD, and, once the insured replaces any items and provides proof of replacement cost, will issue one or more additional checks for the cost of replacement minus ACV (which has already been reimbursed), with the total reimbursement for any given item limited by RCV.

[4] It is not clear why the check enclosed with the revised estimate slightly exceeded ACV. The check enclosed with the first estimate had equaled ACV.

[5] It is clear that Plaintiffs via this letter demanded RCV minus ACV, which, assuming Plaintiffs had replaced the items at a cost equal to or exceeding the RCV, would total $36,969.92. It also appears clear that Plaintiffs disagreed with the nonpayment of depreciated amounts, but it is not clear whether Plaintiffs disputed only the fact that they had not received a separate check for RD or whether they also disputed the fact that they had received no check for

for the real property damage and demanded payment within thirty days. (*Id.* ¶ 52).[6] On February 12, 2013, Beaty sent Plaintiffs a letter indicating that RCV was only payable under the Policy for receipts dated between July 10, 2011 and July 10, 2012. (*Id.* ¶ 55). On May 6, 2013, Plaintiffs received a check from Defendant for $6106.11. (*Id.* ¶ 67). Plaintiffs imply this check was for the repairs to the real property, because they note that on June 3, 2013, they sent Beaty a letter indicating they had received a check from Fisher for those repairs but complained that the check included no letter itemizing the costs. (*See id.* ¶ 68).[7]

Plaintiffs sued Defendant in state court for breach of contract, insurance bad faith, and violations of Chapter 686A. Defendant removed. Plaintiff has moved to remand.

## II.   LEGAL STANDARDS

Assuming complete diversity between the parties, federal courts have jurisdiction over state claw claims where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Where a complaint specifies no precise amount of damages, a removing defendant bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).

## III.   ANALYSIS

Plaintiffs do not dispute complete diversity but argues that the $75,000 amount in

---

NRD. Plaintiffs did not distinguish between these two amounts, and they will presumably seek both amounts at trial, bringing the total amount sought in compensatory damages under the breach claim to $36,969.92 plus $6156.58 plus $15,593.65, or $58,720.15.

[6]In her August 24, 2012 letter to Plaintiffs, Beaty had noted that the ACV of $3147.12 for the real property damage had not yet been paid. (*Id.* ¶ 43). This number exceeded the ACV of $1421.04 initially estimated for the real property damage, (*see id.* ¶ 24), and presumably Plaintiffs seek the greater amount, which would bring the total amount sought in compensatory damages under the breach claim to $58,720.15 plus $3147.12, or $61,867.27.

[7]Because the check received for real property repairs exceeded the highest amount previously estimated, and because Plaintiffs do not appear to claim that a greater amount is desired, the total amount of compensatory damages sought appears to be $58,720.15.

controversy is not satisfied.  Plaintiffs argue that Defendant's statement of jurisdiction in the Notice of Removal is conclusory and note that the Complaint only recites the "damages in excess of $10,000" language required to invoke the jurisdiction of the state district court.  As the Court has noted in other cases, that recital is unhelpful in analyzing the amount in controversy under the federal diversity statute.

Here, although not stated explicitly in the prayer for relief, it can be fairly calculated from the face of the Complaint that $58,720.15 is sought in compensatory damages. *See supra* notes 5–7.  Plaintiffs also seek, *inter alia*, punitive damages and attorney's fees. (*See* Compl. 12). These amounts are properly considered in the present context—punitive damages if recoverable under the state law cause(s) of action asserted, and attorney's fees if recoverable by contract or statute, whether mandatory or discretionary. *See Barry v. Edmunds*, 116 U.S. 550, 562–65 (1886) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (attorney's fees).  The Court is convinced by a preponderance of the evidence that Plaintiffs, if successful on their claims for punitive damages and attorney's fees, will recover at least $16,279.86.  Attorney's fees in this amount alone would be modest, and punitive damages, where awarded, typically exceed compensatory damages.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 6) is DENIED.

IT IS SO ORDERED.

Dated this 24th day of March, 2014.

_____
ROBERT C. JONES
United States District Judge