UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH M. ARTERBURN et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> AMERICAN FAMILY MUTUAL INSURANCE ) <br> CO., ) <br> ) <br> Defendant. ) <br> ) | 3:14-cv-00041-RCJ-VPC <br><br> **ORDER** |

This case arises out of a first-party insurance dispute after a residential burglary. Pending before the Court is a Motion to Reconsider (ECF No. 17). For the reasons given herein, the Court grants the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiffs Joseph and Kelly Arterburn's home was burglarized on July 10, 2011 while they were on vacation. (*See* Compl. ¶¶ 1, 2, 9, 10, Jan. 17, 2014, ECF No. 3). At the time of the burglary, the home was insured by Defendant American Family Mutual Insurance Co. under Policy No, 27P07021-01, with dwelling coverage of $245,600 and personal property damage/replacement coverage of $184,200. (*Id.* ¶¶ 12–14). Plaintiffs immediately notified Defendant of the loss, and Defendant opened Claim No. 00-861-081467-4229. (*Id.* ¶ 15). Plaintiffs completed a proof of loss form, provided proof of ownership of items worth over $250, and met with Defendant's adjuster, Max Fisher, at the residence to inspect the damage to the real property. (*Id.* ¶ 17).

1    Seven months later, on January 30, 2012, Defendant sent Plaintiffs its first estimate of the
2  loss to the personal property, estimating the replacement cash value ("RCV") at $59,891.95, the
3  recoverable depreciation ("RD") at $6156.58, the non-recoverable depreciation ("NRD") at
4  $9774.17, and the actual cash value ("ACV") at $28,741.49. (*Id.* ¶ 18).[1]  Defendant enclosed a
5  check for ACV of $28,741.49. (*Id.* ¶ 19).  Plaintiffs, fearing that cashing this check would
6  prevent them from recovering additional amounts because of a "restrictive endorsement" on the
7  check indicating that it was "payment in full" or "final payment," returned the check to
8  Defendant. (*Id.* ¶¶ 20–21).  On June 15, 2012, Defendant sent Plaintiffs a letter estimating the
9  RCV of the real property at $1845.23, RD at $424.19, and ACV of $1421.04. (*Id.* ¶ 24).
10  Defendant enclosed a check for ACV of $1421.04. (*Id.* ¶ 25).

11    On June 27, 2012, Plaintiffs sent a letter to Defendant's Claim Desk Senior Adjuster
12  Helen Beaty indicating that they had not received a final determination of the claim. (*Id.* ¶ 30).
13  Plaintiffs later received a check from Defendant dated June 18, 2012 for ACV of the personal
14  property of $28,741.49. (*Id.* ¶¶ 27, 31).  The June 18, 2012 check for ACV of the personal
15  property did not contain the same "restrictive endorsement as the January 30, 2012 check that
16  Plaintiffs had returned to Defendant. (*Id.* ¶ 28).  Plaintiffs disputed the payment for the loss of
17  personal property by letter on July 30, 2012, returning the June 18, 2012 check for ACV. (*Id.*
18  ¶¶ 36–38).  Beaty responded by letter dated August 24, 2012, indicating that the June 18, 2012
19  check had been voided and that Defendant would only reimburse for items replaced or repaired

---

[1] Typically, an insurance company will issue separate checks for ACV and RD upon completion of claim forms and proof of ownership, will not reimburse for NRD, and, once the insured replaces any items and provides proof of replacement cost, will issue one or more additional checks for the cost of replacement minus ACV (which has already been reimbursed), with the total reimbursement for any given item limited by RCV.

before July 10, 2011. (*Id.* ¶¶ 41–42).[2]

On November 8, 2012, Defendant sent Plaintiffs a revised estimate of the loss to the personal property, estimating the RCV at $74,012.67 (an increase), the RD at $6156.58 (no change), the NRD at $15,593.65 (an increase), and the ACV at $37,042.75 (an increase). (*Id.* ¶ 46).[3] Defendant enclosed a check for $37,722.35. (*Id.* ¶ 47).[4] On December 10, 2012, Beaty sent Plaintiffs a letter indicating that Fisher would complete the assessment of Plaintiff's claim. (*Id.* ¶ 48). On January 14, 2013, Plaintiffs sent Beaty a letter indicating that they had received the revised estimate and the check for ACV, and that they would send her receipts for replacement items to receive RCV. (*Id.* ¶ 49). In that letter, Plaintiffs noted that they had previously sent some such receipts to Beaty but had not received RCV for replaced items, argued that Beaty should not have "deducted for depreciation," and requested RCV and depreciation payments. (*Id.* ¶ 50).[5] In the letter, Plaintiffs also noted that they had not yet been issued a check

---

[2] Plaintiffs imply elsewhere that the Policy (or Defendant's interpretation of it) only provides for reimbursement (whether ACV or RCV) for items reported within one year of the loss. (*See id.* ¶¶ 32–35). Plaintiffs quote Beaty as identifying July 10, 2011 as the deadline, but that was in fact the date of the loss according to Plaintiffs. It is not clear if Plaintiffs in paragraph 42 of the Complaint have misquoted Beaty or have correctly quoted Beaty's own error. In any case, Plaintiffs allege that Defendant purposely and wrongfully (both in their case and as a matter of practice) delayed the resolution of the claim in order to prevent full payment under the one-year deadline for reporting RCV. (*See id.* ¶¶ 32–35, 59–64).

[3] Typically, an insurance company will issue separate checks for ACV and RD upon completion of claim forms and proof of ownership, will not reimburse for NRD, and, once the insured replaces any items and provides proof of replacement cost, will issue one or more additional checks for the cost of replacement minus ACV (which has already been reimbursed), with the total reimbursement for any given item limited by RCV.

[4] It is not clear why the check enclosed with the revised estimate slightly exceeded ACV. The check enclosed with the first estimate had equaled ACV.

[5] It is clear that Plaintiffs via this letter demanded RCV minus ACV, which, assuming Plaintiffs had replaced the items at a cost equal to or exceeding the RCV, would total $36,969.92. It also appears clear that Plaintiffs disagreed with the nonpayment of depreciated amounts, but it is not clear whether Plaintiffs disputed only the fact that they had not received a separate check for RD or whether they also disputed the fact that they had received no check for

for the real property damage and demanded payment within thirty days. (*Id.* ¶ 52).[6] On February 12, 2013, Beaty sent Plaintiffs a letter indicating that RCV was only payable under the Policy for receipts dated between July 10, 2011 and July 10, 2012. (*Id.* ¶ 55). On May 6, 2013, Plaintiffs received a check from Defendant for $6106.11. (*Id.* ¶ 67). Plaintiffs imply this check was for the repairs to the real property, because they note that on June 3, 2013, they sent Beaty a letter indicating they had received a check from Fisher for those repairs but complained that the check included no letter itemizing the costs. (*See id.* ¶ 68).[7]

    Plaintiffs sued Defendant in state court for breach of contract, insurance bad faith, and violations of Chapter 686A. Defendant removed. Plaintiff moved to remand, and the Court denied the motion. Plaintiffs did not dispute complete diversity but argued that the $75,000 amount in controversy was not satisfied. Plaintiffs argued that Defendant's statement of jurisdiction in the Notice of Removal was conclusory and that the Complaint only recited the "damages in excess of $10,000" language required to invoke the jurisdiction of the state district court. That recital was unhelpful in analyzing the amount in controversy under the federal diversity statute. Although not stated explicitly in the prayer for relief, it could be fairly calculated from the face of the Complaint that $58,720.15 was sought in compensatory damages. *See supra* notes 5–7. Plaintiffs also sought, *inter alia*, punitive damages and attorney's fees. (*See*

---

NRD. Plaintiffs did not distinguish between these two amounts, and they will presumably seek both amounts at trial, bringing the total amount sought in compensatory damages under the breach claim to $36,969.92 plus $6156.58 plus $15,593.65, or $58,720.15.

    [6]In her August 24, 2012 letter to Plaintiffs, Beaty had noted that the ACV of $3147.12 for the real property damage had not yet been paid. (*Id.* ¶ 43). This number exceeded the ACV of $1421.04 initially estimated for the real property damage, (*see id.* ¶ 24), and presumably Plaintiffs seek the greater amount, which would bring the total amount sought in compensatory damages under the breach claim to $58,720.15 plus $3147.12, or $61,867.27.

    [7]Because the check received for real property repairs exceeded the highest amount previously estimated, and because Plaintiffs do not appear to claim that a greater amount is desired, the total amount of compensatory damages sought appears to be $58,720.15.

1  Compl. 12). Those amounts were properly considered in the present context—punitive damages
2  if recoverable under the state law cause(s) of action asserted, and attorney's fees if recoverable by
3  contract or statute, whether mandatory or discretionary. *See Barry v. Edmunds*, 116 U.S. 550,
4  562–65 (1886) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir.
5  1998) (attorney's fees). The Court was convinced by a preponderance of the evidence that
6  Plaintiffs, if successful on their claims for punitive damages and attorney's fees, would recover at
7  least $16,279.86.

## II.  DISCUSSION

9  Plaintiffs have asked the Court to reconsider, arguing that the Court's calculations were in
10 error because under Plaintiffs' policy, RCV minus ACV is the same as the sum of RD plus NRD,
11 yet the Court interpreted the Complaint to demand RCV minus ACV *plus* RD and/or NRD. A
12 policy may cover some percentage of depreciation, but not all of it, in which case RCV - ACV
13 would indeed equal RD + NRD. This did not appear to be the case with the current Policy
14 according to the Complaint, however, because the Complaint does not indicate any set of figures
15 where RCV - ACV = RD + NRD. (*See, e.g.*, Compl. ¶ 46 (implying that RCV - ACV =
16 $36,969.92, but that RD + NRD = $21,750.23)).

17  Plaintiffs have now adduced the November 8, 2012 letter from Defendant, where the
18 discrepancy is better illustrated. In that letter, Defendant: (1) listed $74,012.67 as RCV; (2)
19 subtracted $6156.58 and $15,593.65 as RD and NRD, respectively, indicating that the Policy is
20 one where depreciation is partially recoverable; (3) listed ACV as $52,262.44 minus $14,719.69
21 over the policy limits and a $500 deductible, for a total of $37,042.75 in ACV; and (4) indicated
22 that $28,741.48 had been paid in ACV, leaving $8301.24 remaining in ACV to be paid.

23  Defendant argues that Plaintiffs claim even more than the Court calculated, because they
24 claim entitlement to RCV plus depreciation, not only RCV minus ACV plus depreciation. It is
25 clear that Plaintiffs demanded from Defendant at least RCV minus ACV plus depreciation via the

January 14, 2013 letter, which gives the Court's previous calculation of $58,720.15.  Defendant is correct that the Court previously assumed Plaintiffs were really demanding RCV minus ACV, having received a check for ACV in the amount of $37,722.35 on November 8, 2012.  It is unclear whether Plaintiffs cashed that check or whether it has been returned, destroyed, lapsed, etc., such that Plaintiffs now in fact demand RCV, rather than RCV minus ACV.  Nor is it clear whether Plaintiffs have received any check for RD, or whether they in fact claim entitlement to the depreciation characterized by Defendant as NRD.  These doubts must be resolved against removability at this time. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  If it later becomes clear in state court that Plaintiffs seek more than the jurisdictional amount, Defendant may remove again based on the relevant "other paper[s]" making removability clear. *See* 28 U.S.C. § 1446(b)(3).

Next, Plaintiffs are incorrect that attorney's fees are not available in this case.  Indeed, they have prayed for them.  But Plaintiffs are correct that Defendant has identified no contractual provision for fee shifting.  Therefore, attorney's fees are probably only available in this case under Nevada Revised Statutes section 18.010(2)(a) if Plaintiffs recover less than $20,000.  But because fees in this case are not likely to exceed $55,000, the availability of attorney's fees under section 18.010(2)(a) does not aid Defendants in showing removability.[8]

Finally, there is indeed a clerical error in the previous order.  In the background section, the Clerk appears to have inserted "$250,000," where the Court had written the amount "$250."  But that was irrelevant to the damages sought.  It concerned background information as to the

---

[8]The Court disagrees that only attorney's fees incurred as of the time of removal are considered in the amount-in-controversy analysis.  The district courts within the Circuit are split on this issue, but the Court of Appeals has never implied such a division. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 143 F.3d 1150, 1155–56 (9th Cir. 1998).  The amount-in-controversy includes the amount that can be expected to be adjudged against a Defendant, and that includes all fees payable by statute, rule, or contract, not only those incurred at the time of removal.

1 threshold for proof of ownership of lost items under the Policy.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 17) is GRANTED.

IT IS FURTHER ORDERED that the case is remanded, and the Clerk shall close the case.

IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated: This 12th day of September, 2014.

_____
ROBERT C. JONES
United States District Judge